**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 21 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES T. KNIGHT**
HILLIS, HILLIS, ROZZI & KNIGHT
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: J.W.K, R.K., J.N.K., B.K., AND J.K. Minor Children, | ) ) ) ) |
| and | ) ) |
| S.K., Mother, | ) ) |
| Appellants-Respondents, | ) ) |
| vs. | ) No. 75A05-1307-JT-368 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Plaintiff. | ) ) |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Kim Hall, Judge
Cause Nos. 75C01-1304-JT-4, 75C01-1304-JT-5, 75C01-1304-JT-6, 75C01-1304-JT-7,
75C01-1304-JT-8

**March 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

S.K. (Mother) appeals the termination of her parental rights to J.W.K., born October 11, 2000; R.K., born March 6, 2002; J.N.K., born June 10, 2003; B.K., born July 30, 2004; and J.K., born April 25, 2006 (collectively, Children). She argues the Department of Child Services (DCS) did not present sufficient evidence the conditions under which Children were removed would not be remedied or that termination was in the best interests of Children. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Mother and A.K. (Father)[1] are the parents of Children. On October 3, 2011, DCS received a report that the family home was unsafe due to excessive clutter and drug use. Mother was uncooperative with DCS, so DCS obtained a court order to enter the residence. DCS and law enforcement discovered extreme clutter throughout the entire house, no working utilities, black mold on the back wall of the porch, an unstable back porch, falling ceiling, hanging wires, and a non-working refrigerator containing insects that were feeding on the rotten food therein. At the time, Mother indicated she and Children were living with Mother's adult child.

On October 21, Mother told DCS she and Children had to move back into the family home. DCS and the Health Department attempted to work with Mother for a month to remedy the conditions found in the family home on October 3. Mother made very little progress, and on November 22, the Fire Chief inspected the home and concluded it was unsafe for Mother and Children to live there. DCS removed Children from Mother's care the

---

[1] Father voluntarily relinquished his parental rights to Children and does not participate in this appeal.

same day.

On December 14, the trial court adjudicated Children as Children in Need of Services (CHINS) upon admission of both parents. On January 10, 2012, the trial court entered a dispositional order placing Children outside of Mother's care and ordered Mother to, among other things, attend all appointments and cooperate with the home-based therapist and home case manager; work with DCS and the treatment team to make the required improvements to the home and to eliminate unnecessary clutter in the home; work with service providers to clean the home and maintain that progress; work with a therapist to identify and avoid triggers that resulted in the unsatisfactory condition of the home; and obtain and maintain a means of financial support for Children. On April 15, 2013, DCS filed a petition to terminate Mother's parental rights to Children because she had not progressed in services and had ceased visiting Children in September 2012.

The trial court held evidentiary hearings on the termination petition on June 25 and 26, 2013. DCS presented evidence Mother had removed some of the clutter from the house and made some of the required repairs, but was resistant to making changes and the home was starting to get cluttered again; Mother did not follow through with mental health treatment recommendations, which were the root of her issues with the condition of the home; Mother did not have a stable income; and Mother failed to visit Children after September 2012 and missed several visits before that time. The trial court entered an order terminating Mother's parental rights to Children on July 22.

**DISCUSSION AND DECISION**

We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied,* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances

4

surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court

finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8. Mother argues DCS did not present sufficient evidence to prove the conditions under which Children were removed would not be remedied, pursuant to Ind. Code § 31-35-2-4(b)(2)(B)(i), or that termination was in the best interests of Children pursuant to Ind. Code § 31-35-2(b)(2)(C). We address each argument in turn.

a.    Ind. Code § 31-35-2(b)(2)(B)(i)

A trial court may not terminate a parent's rights unless the State demonstrates by clear and convincing evidence "there is a reasonable probability that: (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child." Ind. Code § 31-35-2-4(b)(2)(B); *see also In re W.B.*, 772 N.E.2d 522, 529 (Ind. Ct. App. 2002) (noting State's burden of proof). Because the statute was written in the disjunctive, the State needs to prove only one. *In re J.W.*, 779 N.E.2d 954, 962 (Ind. Ct. App. 2002), *trans. denied sub nom. Weldishofer v. Dearborn Cnty. Div. of Family & Children*, 792 N.E.2d 40 (Ind. 2003). Therefore, when the evidence supports one of the trial court's conclusions, we need not determine whether the evidence supports the remaining portions of the statute. *Id*.

Mother challenges only whether the evidence supports the findings the court used to support its conclusion that the conditions resulting in removal of Children will not be remedied. However, the court also concluded the continuation of the parent-child relationship poses a threat to the well-being of Children, and the court entered a number of

6

independent findings to support that conclusion. Mother has not challenged that conclusion or any of the findings that support that conclusion. Because the unchallenged findings support the unchallenged conclusion, which supports the termination of Mother's parental rights, we need not review Mother's allegations regarding the superfluous findings and conclusion\. *See T.B. v. Indiana Dept. of Child Services*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (when unchallenged findings support termination, there is no error), *trans. denied.*

### b. Ind. Code § 31-35-2(b)(2)(C)

Pursuant to Ind. Code § 31-35-2-4(b)(1)(C), DCS needed to provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and to consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

Regarding Children's best interests, the trial court concluded:[2]

Termination of parental rights is in the best interest of the child. Both the Family Case Manager and the CASA testified that the child has been adversely

---

[2] The trial court entered separate orders with identical language for each child, with the exception of the identifying information for the specific child. Therefore, we quote from the order regarding the oldest child, J.W.K.

impacted by the mother's inability to provide a safe and stable home. Further, the child has been adversely affected by the lack of permanency. The child is in need of a permanent placement with the child's siblings in a safe, stable, and loving environment. The Court finds there is clear and convincing evidence that it would be contrary to the best interests of the child to be required to continue to wait in a temporary, impermanent situation for the mother to overcome the problems that have kept her from providing the child with a safe, stable, and permanent home.

(App. at 17.) To support that conclusion, the trial court found Children had been removed from Mother's care for almost two years, Mother refused treatment for mental illness, and Mother was resistant to outside intervention and help with cleaning and repairing her house, which was the reason Children were removed from her care. Mother's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge credibility of witnesses).

## CONCLUSION

As Mother does not challenge, and there was sufficient evidence to support the trial court's determination that the continuance of the parent-children relationship posed a threat to the well-being of Children, we need not consider Mother's argument regarding the sufficiency of the evidence presented to prove the conditions under which Children were removed from Mother's home would not be remedied. Additionally, DCS provided

8

sufficient evidence to prove termination of Mother's parental rights was in the best interest of Children.  Accordingly, we affirm.

Affirmed.

VAIDIK, C.J., and RILEY, J., concur.